A.W.G. FARMS, INC., et al., Plaintiffs,

v.

FEDERAL CROP INSURANCE CORPORATION, Defendant.

B.J. BORGEN, INC., et al., Plaintiffs,

v.

FEDERAL CROP INSURANCE CORPORATION, Defendant.

ALTON TINKHAM, INC., et al., Plaintiffs,

v.

FEDERAL CROP INSURANCE CORPORATION, Defendant.

BORGEN BROTHERS, et al., Plaintiffs,

v.

FEDERAL CROP INSURANCE CORPORATION, Defendant.

NELSON FARMS, et al., Plaintiffs,

v.

FEDERAL CROP INSURANCE CORPORATION, Defendant.

Civ. Nos. 6–83–374, 6–83–399 to 6–83–402.

United States District Court,
D. Minnesota,
Sixth Division.

May 10, 1984.

Peter M. Lancaster, Civ. Div., Dept. of Justice, Ralph A. Linden, Dept. of Agriculture, Washington, D.C., and Joan N. Ericksen, Asst. U.S. Atty., D. Minn., Minneapolis, Minn., for Federal Crop Ins. Corp. (FCIC).

Norman R. Carpenter and Robert L. Schnell, Jr., of Faegre & Benson, Minneapolis, Minn., and Morris Dickel of Dickel, Johannson, Wall, Taylor & Rust, Crookston, Minn., for plaintiffs.

## AMENDED MEMORANDUM AND ORDER

DEVITT, Senior District Judge.

The above-entitled cases came on for hearing on April 2, 1984, on defendant Federal Crop Insurance Corporation's motion for summary judgment and on plaintiffs' motion for partial summary judgment. A second hearing was held on May 7, 1984, on the government's motion to correct factual errors in this court's Memorandum & Order of April 4, 1984. This Amended Memorandum and Order is intended to replace the April 4, 1984, Memorandum and Order. Peter M. Lancaster of the Civil Division of the Department of Justice, Ralph A. Linden of the Office of General Counsel of the Department of Agriculture, and Joan N. Ericksen, Assistant United States Attorney for the District of Minnesota, appeared on behalf of the Federal Crop Insurance Corporation (FCIC). Norman R. Carpenter and Robert L. Schnell, Jr., of Faegre & Benson, Minneapolis, Minnesota, and Morris Dickel of Dickel, Johannson, Wall, Taylor & Rust, Crookston, Minnesota, appeared on behalf of plaintiffs.

Plaintiffs grow sugar beets in the Red River Valley and are cooperative members of the American Crystal Sugar Company of Moorhead, Minnesota. They purchased "all risk" crop insurance from the FCIC in 1981. The all risk sugar beet insurance policy, which is printed in the Code of Federal Regulations, 7 C.F.R. § 430.7, provides preharvest coverage for "unavoidable loss of production resulting from adverse weather conditions." 7 C.F.R. § 430.7, Policy Term 1. The policy insures quantity and quality of production; it does not insure income per se. A sugar beet grower buys insurance for anticipated tonnage of beets per insured acreage; he also insures the anticipated sugar content (i.e., the quality) of the tonnage expected to be produced. If the sugar beets produced from the insured acreage fall below the insured tonnage or if the beets do not meet the insured level of sugar content, or both, then the grower can make a claim for the difference between the insured production and the actual quantity of quality tonnage produced.

Because the insurance is based on the quantity and the quality of the beets produced, ascertaining the tonnage produced and the level of sugar content in the produced tonnage is crucial to fixing the amount of loss under the FCIC insurance scheme. The policy envisions three situations and methods for determining an insured loss:

1. If the grower harvests the beets and the processor receives or accepts them (does not reject them as unacceptable under the contract with the grower), then at the time of delivery the tonnage of the beets and their sugar content must be measured. These data are then used to determine any loss. If no test for sugar content is made at the time of delivery, the sugar content of the delivered beets is conclusively presumed to be equal to the insured level.

2. If the grower harvests the beets but the processor determines them to be unacceptable under the terms of the grower-processor contract due to an insurable loss, then the FCIC will appraise the value of rejected beets and any insured loss will be ascertained based on the FCIC's appraisal. In such cases there is no adjustment to the quantity of harvested tonnage based on reduced levels of sugar content.

3. If the grower decides not to harvest his beets because of damage resulting from an insurable cause, the FCIC will appraise the value of the unharvested beets and any loss will be based on the FCIC's appraisal.

7 C.F.R. § 430.7, Policy Term 8(c)(1); 8(c)(1)(i), (ii); 8(c)(2). These are the only methods for ascertaining loss under the insurance contract. The contract does not insure against loss due to the grower's "failure to follow recognized good farming practices," 7 C.F.R. § 430.7, Policy Term 1(b)(2), and the FCIC reserves the right to reject any claim for indemnity if the requirements outlined in the three methods for determining loss are not followed and the FCIC "determines that the amount of loss cannot be satisfactorily determined." 7 C.F.R. § 430.7, Appendix to Policy, § 5(g).

This, then, was the policy in force when an unexpected spell of freezing weather hit the Red River Valley in late October 1981. The freeze lasted about five days. When the freeze began on October 20, about 45% of the sugar beet crop was still in the field. American Crystal records, as well as affidavit testimony, indicate that harvesting is usually substantially completed by October 20. The FCIC argues that a three week strike by American Crystal employees in late September 1981 pushed back the harvest completion. American Crystal documents support this argument but plaintiffs say the strike had no effect on the harvest. Crop damage caused by a preharvest strike is not an insurable loss under the contract.

During the five day freeze insured growers sought advice from FCIC agents about the coverage of their policies and the procedures they should follow. Plaintiffs say, generally, that they were told that freeze damage was covered under the policy but they were given no firm guidance as to what they should do with their unharvested beets. The FCIC says its agents are not supposed to make farming decisions for the growers; the growers are expected to follow "recognized good farming practices." The FCIC agents were only to inform the growers of the insurance consequences of their actions. The plaintiffs say that the FCIC agents did not even advise them of the insurance consequences. The FCIC says it did advise growers to harvest their beets and deliver them to their processor.

During the course of the freeze American Crystal told its growers to harvest only that quantity of beets American Crystal could process on a daily basis. The main problem with freeze-damaged beets is that they lose their storability. An undamaged beet can be stored outdoors the entire winter awaiting processing and not suffer any deterioration in recoverable sugar content. A freeze-damaged beet's processability is adversely affected by weather changes during storage and will deteriorate the longer it is stored. Thus, while there is no need to rush in processing undamaged beets, freeze-damaged beets must be processed quickly before they deteriorate during storage.

After the freeze, American Crystal made the decision to receive all freeze-damaged beets and store them pending processing. American Crystal processed the damaged beets first and let the stored, undamaged beets sit. American Crystal recorded the tonnage and sugar content of the post-freeze beets and the FCIC adjusted the post-freeze tonnage based on reduced sugar content and compensated plaintiffs for this reduction. Plaintiffs now assert that they are entitled to compensation for the decreased value of the freeze-damaged beets aside from any reduction in sugar content.

Plaintiffs assert four theories of recovery: (1) They say they are entitled to indemnity for the decrease in value of the freeze-damaged beets under the terms of the second contractual loss determination method because the freeze was covered by the policy and the freeze rendered all beets harvested after the freeze unacceptable and worthless; (2) if plaintiffs are not entitled to indemnity under the terms of the contract, then the contract should be reformed on the basis of mutual mistake because Congress intended the insurance

to cover the type of loss experienced by plaintiffs and plaintiffs intended to purchase insurance that covered this type of loss; (3) if plaintiffs are not entitled to indemnity under the terms of the contract, then the contract should be reformed because of a unilateral mistake on the part of plaintiffs in thinking they purchased insurance that covered this loss and the FCIC's willful misconduct or fraud in now denying coverage; and (4) if plaintiffs are not entitled to indemnity under the terms of the contract, then the FCIC should be estopped from denying coverage because the FCIC made written and oral representations that the policy covered losses due to frost or freezing.

The FCIC responds by saying that the contract, while it covers loss due to freezing, does not pay indemnity simply on that basis alone. The FCIC says that in the event of a covered loss, the amount of insured loss must be determined by one of the three contractual loss determination methods described above. Plaintiffs here did not follow the requirements of the method on which they now claim indemnity. Thus, the FCIC argues, determining loss has become confused and inevitably subject to inaccuracy, and under the contract, no indemnity is owed if the FCIC decides that it cannot satisfactorily determine the amount of loss attributable to the insurable cause.

The FCIC says it cannot satisfactorily determine the amount of loss because plaintiffs did not follow the requirements of the second loss determination method. The FCIC hastens to point out that it did indemnify plaintiffs for post-freeze sugar content losses quantified at the time of delivery and that it allowed an across-the-board 15.8% reduction in the tonnage delivered after the freeze because 15.8% of the post-freeze beets were never processed due to extreme deterioration during storage. The FCIC says it cannot now satisfactorily determine the decrease in value due to the freeze because the freeze-damaged beets were not rejected by the processor and therefore their value was not appraised by the FCIC. The FCIC says that after the processing campaign, it has no way of accurately knowing the effects of noninsurable value-reducing causes. Such noninsurable causes allegedly include the delay caused by the strike, the effects of post-harvest weather on the stored beets, and possible errors made by American Crystal in processing the beets.

As for the reformation and estoppel theories, the FCIC first cites federal law that holds there is no estoppel against the government. Thus, the FCIC says plaintiffs' estoppel theory has no legal support. The FCIC then says that both of plaintiffs' reformation theories are also without legal support because they are in fact estoppel claims. The FCIC reasons as follows: Since the policy has been in existence for years and has appeared in the CFR all that time, there can be no mistake by the FCIC about its contractual intent. Any different understanding plaintiffs might have can only be attributable to misrepresentations, if any, by FCIC publications or agents. Since there is no estoppel for misrepresentations by FCIC agents or publications, there can be no reformation on that basis either. Reforming the contract rather than ignoring its terms to allow indemnity is form over substance.

In their claim under the contract plaintiffs argue that the beets were freeze-damaged and that the contract between the plaintiffs and American Crystal, the processor, provided that American Crystal had "the option of rejecting" any frozen or damaged beets or beets which, in the opinion of American Crystal, were not suitable for storage or for the manufacture of sugar. *See* Three Year Agreement, Clause 7. By these criteria, plaintiffs say their post-freeze beets were unacceptable within the meaning of the second contractual method for loss determination.

However, as the FCIC argues, although American Crystal had the option of rejecting these objectively unacceptable beets, it did not reject them but accepted delivery of them, measured the tonnage and sugar content at the time of delivery, received

compensation for adjustments in tonnage based on reduced sugar content, and processed the freeze-damaged beets as best it could. Plaintiffs and American Crystal acted in accordance with the first method of loss determination in the contractual loss determination scheme. After American Crystal received the beets for processing, the FCIC had no reason to initiate an appraisal of damaged beets in American Crystal's possession awaiting processing. Thus even though the beets may have been objectively unacceptable, American Crystal decided not to exercise its option to reject the damaged beets. The FCIC never had occasion to appraise the beets pursuant to the second method for loss determination because American Crystal never rejected the beets as being unacceptable under its contract with the growers.

█ The first and second loss determination methods appear to be exclusive. According to the second method, if the FCIC appraises the value of beets that are unacceptable under the processor's contract with the grower, there shall be no adjustment in tonnage based on reduced sugar content. 7 C.F.R. § 430.7, Policy Term 8(c)(1). Here plaintiffs' tonnage was adjusted for reduced sugar content and plaintiffs received compensation in accordance with the first contractual method for loss determination. For this reason alone, additional compensation for decreased value does not seem to be forthcoming under the terms of the contract.

Even if additional compensation based on appraised loss of value were available, the FCIC made no such appraisal because the processor never rejected the beets as unacceptable pursuant to the second loss determination method. Because the FCIC had no reason to appraise the beets American Crystal had received for processing, any FCIC appraisal of decreased value due to the freeze would have to be made after the time of delivery and potentially would be complicated by any post-harvest production-reducing factors. Pursuant to the insurance contract, if the requirements of the second loss determination method were not

followed and the FCIC decided it could not satisfactorily determine the decreased value due to the freeze, no indemnity is owed. 7 C.F.R. § 430.7, Appendix to Policy § 5(g). The FCIC decided that it could not make such a determination due to other possible noninsurable value-decreasing factors and therefore denied indemnity.

Under the terms of the contract it seems clear that the objective "acceptability" of beets is not the important issue in determining which contractual method of loss should be invoked. If the processor rejects the beets because they are unacceptable under the contract, then the FCIC appraises the value of the rejected beets pursuant to the second loss determination method. If the processor does not reject the beets, then it measures tonnage and sugar content and receives compensation for tonnage adjusted to reflect reduced sugar content.

█ As for the estoppel claim, the case of *FCIC v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), holds that inadvertently mistaken misrepresentations by FCIC agents about insurance coverage do not estop the FCIC from denying coverage to persons who detrimentally rely on such statements. Misrepresentations by government agents cannot alter duly enacted legislation or regulations. Courts have a duty "to observe the conditions defined by Congress for charging the public treasury." *Id.* at 385, 68 S.Ct. at 3. This potentially harsh rule has been reaffirmed repeatedly by the Supreme Court and by the courts of appeal. *See, e.g., Leimbach v. Califano,* 596 F.2d 300, 304–05 (8th Cir.1979). And although the Supreme Court has left open the possibility that estoppel may be available against the federal government in cases of "affirmative misconduct," *see INS v. Hibi,* 414 U.S. 5, 8, 94 S.Ct. 19, 21, 38 L.Ed.2d 7 (1973), no such conduct is present here. Indeed plaintiffs do not even appear to have established the essential elements of estoppel because no misrepresentations over freeze coverage were ever made. *See generally, United States v. Aetna Casualty & Sur. Co.,* 480 F.2d 1095, 1099 (8th Cir.1973). The FCIC never represented

that loss caused by freezing weather was not an insurable occurrence. The issue here is not coverage but accurate determination of loss according contractual requirements.

■ Plaintiffs' reformation theories also are problematic. First of all, as explained above, reformation is really an alternate form of estoppel. Plaintiffs seek to reform the contract to accord with the FCIC's alleged inadvertent or willful misrepresentations about the coverage. Second, plaintiffs again confuse coverage, which has never been misunderstood by either party and is not now in dispute, with the contractual method of loss determination, which also has never been misunderstood by the FCIC or misrepresented. Plaintiffs' reformation theories run into the same problems as their estoppel claim.

■ In the end it all comes back to the contract. Assuming that damage to the beets caused by a preharvest freeze is an insurable loss and that the beets were unacceptable under the terms of the growers' contract with the processor, plaintiffs are not entitled to indemnity for decreased value because they have already been compensated for the reduced sugar content and because the reasonable contractual method for accurately determining the decreased value of unacceptable beets was not followed. However equitable and reasonable it would be to allow plaintiffs' claim under the facts of this case, it is not our role to redraft the insurance agreement. Whether plaintiffs or this court agrees with the wisdom of this policy, the FCIC has implemented a plan to insure against all natural preharvest risks. Who is to say that the contractual loss determination scheme is not in harmony with congressional intent? Plaintiffs repeatedly imply that appraisal of the decreased value of the freeze-damaged beets can readily be made after the processing campaign, some five to six months after the freeze and the harvest. The obvious problem with such a delayed valuation of damage caused by an insurable risk is the opportunity it allows for sundry other uninsured production-reducing factors to enter into the picture.

Ascertaining loss at or near the time of loss or harvest is a sensible loss determination scheme.

Plaintiffs also suggest that the contractual loss scheme does not appear to contemplate storage and processing problems with freeze-damaged beets. However, such problems become the responsibility of the processor after he receives the beets. It is the processor's decision to accept or reject the freeze-damaged beets for processing that makes storage and processing critical. The FCIC should not be made to insure the processor's decision to accept freeze-damaged beets. If the processor cannot process all the freeze-damaged beets he accepts before they deteriorate during storage or because they are not processable, the FCIC should not pay for the processor's miscalculation of his ability to process quickly or simply process the freeze-damaged beets.

Plaintiffs' position prompts empathy because, intuitively, it seems as though plaintiffs should be indemnified for their losses. We have searched for and pondered over equitable solutions to their predicament but we have found none that can get around the contract. The language of the contract is clear on methods for determining loss. Summary judgment is appropriate because the essential facts—the occurrence of the preharvest freeze, the processor's failure to reject the freeze-damaged beets as being unacceptable, the measurement of and payment for reduced sugar content, the processing of the freeze-damaged beets—are not disputed. Under the contract as clearly written and logically construed, plaintiffs are not entitled to additional indemnity for decreased value. Similarly, plaintiffs are not entitled to such indemnity on their estoppel or reformation claims.

Accordingly, the FCIC's motion for summary judgment is GRANTED, and plaintiffs' motion for partial summary judgment is DENIED.