757 F.2d 720
 B.J. BORGEN, INC., et al., Appellants,
B.J. BORGEN, INC.
v.
FED. CROP. INS. CORP.
v.
FEDERAL CROP INSURANCE CORPORATION, Appellee.
Joe Ruliffson Farm Company, Paul Ruliffson Farm Company,
Richards Bros., Sinner Bros. & Bresnahan, Witte Partnership,
Brian Borgen, Wayne Giermann, Vernon & John Grommesh, Fred
M. Hector, Norbert Kensok, James E. Kieffer, Michael Lee,
Wayne & Ken Lougheed, G.E. & Gary J. Nelson, Greg Nelson,
Howard Nelson, Ralph Nelson, Dewey K. Olson, Myron Rostad,
Tom & Dave Sinner, Duane Sullivan, Ralph Sullivan, Earl A.
Vining, Lorry Vining, Donald Warner, Daniel Zimmerman,
Plaintiffs/Intervenors.
BORGEN BROS., et al., Appellants,
v.
FEDERAL CROP INSURANCE CORPORATION, Appellee.
Borgen Bros., Broken "E" Beets, Dacasons, Inc., Elder Drive
Farm, Fossum & Bryl Farms, Fossum & Bryl Farms, (Part.), Her
Way, Inc., Kritzberger Bros., Mueller Brothers, R.
Harrington & Son Beet Co., Short & Sweet Farms, Earl
Abentroth, Fay & Ray Abentroth, Leo Ackerman, Lawrence D.
Anderson, Richard Anderson, Wayne Borgen, Karl A. Kiehl,
Roger and Harlan Diehl, Steven Eastvold, Timothy R.
Eisenhardt, Ralph C. Engel, Wendell Garrett, Art E. Grove,
Kenneth Halvorson, Frank & Lyn Harrington, Duane J. Hersch,
David G. Johnson, James Kozojed, E.F. Krabbenhoft, Tom
Mcinnes, Virgil McNamee, Ralph Meyer, Rodney Meyer, Leonard
Muller, Curtis Reimer, Donald Reimer, Rayland Scholl,
Raymond Scholl, Harlan Swenson, Plaintiffs/Intervenors.
NELSON FARMS, Larry D. Jensen, Arlan McFarland, Michael T.
McFarland, Weldon McFarland, Clarence Peterson,
Jr., Thomas Peterson, Kenneth
Setterholm, Raymond Ward,
Reynold W. Ward, Appellants,
v.
FEDERAL CROP INSURANCE CORPORATION, Appellee.
James L. Grzadzieleski, Wendell K. Kelm, Roy Morris, Manford
G. Newell, William J. Newell, Roy A. Paton,
Plaintiffs/Intervenors.
 Nos. 84-5087 to 84-5091.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 10, 1984.
Decided March 22, 1985.
 
 Morris Dickel and Norman R. Carpenter, Minneapolis, Minn., for appellants.
 Robert M. Hollis, Dept. of Justice, Washington, D.C., for appellee.
 Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, JOHN R. GIBSON, Circuit Judge.
 LAY, Chief Judge.
 
 
 1
 This litigation involves crop losses incurred by 350 sugar beet growers in the Red River Valley of Minnesota and North Dakota. The crop damage resulted from a five-day freeze in October of 1981. The post-freeze harvest totaled some 2.3 million tons of beets and the growers' losses allegedly were in the multi-million dollar range. The growers are cooperative members of the American Crystal Sugar Company (American Crystal), which processes the beets grown in the Valley. This suit was brought by the growers against the Federal Crop Insurance Corporation (FCIC), which insured the growers' production under an "all-risk" crop insurance policy. The district court, 586 F.Supp. 690,[1] granted summary judgment in favor of the FCIC. We reverse and remand for further proceedings.
 
 Facts
 
 2
 The growers purchased "all-risk" crop insurance from the FCIC in 1981. The insurance policy which is printed in the Code of Federal Regulations, 7 C.F.R. Sec. 430.7 (1982), provides preharvest coverage for "unavoidable loss of production resulting from adverse weather conditions." Paragraph 8(c)(1) of the policy[2] envisions two methods for ascertaining the amount of an insured loss to harvested sugar beets: (1) sugar content is measured by the processor upon delivery of the sugar beets, and (2) in the event that harvested sugar beets "are not acceptable under the contract with a processor," the FCIC will appraise the beets without making an adjustment for quality, i.e., sugar content. The district court found that the two methods of loss determination "appear to be exclusive," based on the third proviso of paragraph 8(c)(1), which states that FCIC appraisals of unacceptable beets should not include quality adjustments, meaning adjustments based on sugar content.[3]
 
 
 3
 To understand the parties' dispute, some background on the production of sugar beets and the damage caused by freezing weather is necessary. After sugar beets are harvested, they are delivered to a processor. Because processing plant capacity is limited, harvested beets must be stored during the processing season, usually 180 to 200 days. An undamaged beet can be stored the entire winter awaiting processing and not suffer any deterioration in recoverable sugar content. The freezing and subsequent thawing of an unharvested sugar beet, however, causes damage to the beet's cellular structure and reduces the storability of the beet. The deterioration of freeze-damaged beets occurs gradually; thus, such beets must be processed quickly. Furthermore, while the sugar content of the beet can be and is measured upon delivery of harvested beets to the processor, this measurement does not reflect the storability of the beet or the ability to recover at some later point the sugar content of the beet. The extent of damage to a frozen-thawed beet cannot be determined accurately at harvest or delivery by any commercially feasible test. The only method of assessing damage at harvest is an expert's opinion based upon similar situations.
 
 
 4
 During the 1981 freeze, insured growers sought advice from FCIC agents about the coverage of their policies and the procedures they should follow. The FCIC began monitoring the crop situation in the Valley at the inception of the freezing weather. The growers contend that they were told the freeze damage was covered under the policy but that they were given no firm guidance as to what they should do with their unharvested beets. The FCIC responds that its agents are not supposed to make farming decisions for the growers; the growers are expected to follow "recognized good farming practices." The FCIC agents were only to inform the growers of the insurance consequences of their actions. The growers say, however, that the FCIC agents did not even advise them of the insurance consequences. The FCIC says it did advise growers to harvest their beets and deliver them to their processor.
 
 
 5
 Because of the difficulty of determining the extent of damage to frozen beets, during the freeze American Crystal told its growers to harvest only that quantity of beets American Crystal could process on a daily basis. After the freeze, American Crystal made the decision to receive all freeze-damaged beets and store them pending processing.[4] American Crystal processed the damaged beets first and let the stored, undamaged beets sit. The freeze-damaged beets were processed until the frozen beets deteriorated to the extent they would no longer produce sugar by themselves. The post-freeze beets were then combined with pre-freeze beets to be processed together, which permitted some further sugar recovery. In the end, some 375,000 tons of post-freeze beets were destroyed because they could not be processed. Upon delivery, American Crystal recorded the tonnage and sugar content of the post-freeze beets and the FCIC adjusted the post-freeze tonnage based on reduced sugar content. This adjustment for reduced sugar content was made under the first loss determination method contained in paragraph 8(c)(1) of the policy, which was described above. While the damaged beets were being processed, Robert Fox, the Acting Director of the FCIC Claims Division, reported to Senator Mark Andrews, who had followed the situation for his constituents, that the computation of indemnity would have to await the completion of processing.[5]
 
 
 6
 In June 1982 the FCIC offered to allow a 15.8% reduction in the post-freeze tonnage because 15.8% of the post-freeze beets delivered to and accepted by American Sugar were never processed due to extreme deterioration during storage. The FCIC explains the 15.8% reduction as a "management decision." The growers in this action refused to settle their claims using the 15.8% figure, arguing that at least 80% of the post-freeze beets should not count against the production guarantee. The growers claim they are entitled to indemnity under the terms of the second loss determination method of paragraph 8(c)(1) of the policy, because the freeze-damaged beets were rendered unacceptable under their contract with American Crystal. Their claims for indemnity were denied by the FCIC on the ground that once the beets were delivered to the processor, accepted and processed, no indemnity obtained under the second proviso of paragraph 8(c)(1). Prior to the completion of discovery, the FCIC moved for summary judgment on all issues under Rule 56 of the Federal Rules of Civil Procedure. The growers filed a cross-motion for summary judgment on the issue of contract interpretation but otherwise resisted the motion on the ground that genuine issues of material fact remained to be resolved.
 
 
 7
 The district court granted the government's motion and filed a Memorandum and Order on April 4, 1984 and an Amended Memorandum and Order on May 10, 1984. The district court determined that the growers could not be indemnified under the second loss determination method because American Crystal had accepted delivery of the beets. The court concluded that the processor's act of accepting or rejecting delivery of beets, rather than the objective "acceptability" of beets, determined which contractual loss determination method should be invoked. Thus, the court reasoned:
 
 
 8
 Under the terms of the contract it seems clear that the objective "acceptability" of beets is not the important issue in determining which contractual method of loss should be invoked. If the processor rejects the beets because they are unacceptable under the contract, then the FCIC appraises the value of the rejected beets pursuant to the second loss determination method. If the processor does not reject the beets, then it measures tonnage and sugar content and receives compensation for tonnage adjusted to reflect reduced sugar content.
 
 
 9
 The primary basis for the district court's decision, however, was its assumption that the growers failed to comply with the contractual method of loss determination by not requesting an appraisal of the damaged beets before processing. The court reasoned:
 
 
 10
 Because the FCIC had no reason to appraise the beets American Crystal had received for processing, any FCIC appraisal of decreased value due to the freeze would have to be made after the time of delivery and potentially would be complicated by any post-harvest production-reducing factors. Pursuant to the insurance contract, if the requirements of the second loss determination method were not followed and the FCIC decided it could not satisfactorily determine the decreased value due to the freeze, no indemnity is owed. 7 C.F.R. Sec. 430.7, Apendix [sic] to Policy Sec. 5(g). The FCIC decided that it could not make such a determination due to other possible noninsurable value-decreasing factors and therefore denied indemnity.[6]
 
 
 11
 We respectfully disagree with the district court's analysis.
 
 Discussion
 
 12
 Initially, we note that the issue in this case is not one of coverage. The government concedes that the type of loss suffered by the growers, that is, damage caused by a pre-harvest freeze, is a loss insured under the FCIC insurance contract. Rather, the issue here involves the amount of indemnity due under the policy.
 
 
 13
 The insurance policy at issue must be interpreted in light of several well-recognized principles for the construction and interpretation of insurance contracts. We look to state as well as federal caselaw as a source for federal common law on applicable principles of construction. First, it is uniformly held that a contract of insurance is to be construed liberally in favor of the insured and strictly as against the insurer. E.g., First National Bank of Minneapolis v. Fidelity National Title Insurance Co., 572 F.2d 155, 161 (8th Cir.1978); Howard v. Federal Crop Insurance Corp., 540 F.2d 695, 697 (4th Cir.1976). This principle has particular significance in this case which involves a contract of adhesion, the terms of which were under the exclusive control of the FCIC. Landro v. Glendenning Motorways, Inc., 625 F.2d 1344, 1354 (8th Cir.1980). As stated by the Minnesota Supreme Court:
 
 
 14
 Where one of the parties draws a contract and the other must accept or reject but cannot vary the terms, the burden is upon the party drawing the contract to make the meaning plain. Where meaning is thus uncertain, as it is in the contracts here involved, the ambiguities and doubts must be resolved against the party who prepared the contract.
 
 
 15
 Weum v. Mutual Benefit Health & Accident Association, 237 Minn. 89, 104-05, 54 N.W.2d 20, 29 (1952). It is also well recognized that whenever reasonably possible, words must be construed so as to effectuate the general insurance purpose of the contract. Struble v. Occidental Life Insurance Co. of California, 265 Minn. 26, 35-36, 120 N.W.2d 609, 616 (1963). "In resolving doubts as to the meaning to be given the terms of an insurance contract, this court will note the purposes for seeking insurance and will avoid an interpretation which would forfeit rights which the insured may have believed he was securing * * *." Weum, 237 Minn. at 105, 54 N.W.2d at 29. Moreover, words may be construed contrary to their literal meaning in order to carry out the general object of the insuring agreement. Struble, 265 Minn. at 35-36, 120 N.W.2d at 616; Bolduc v. New York Fire Insurance Co., 244 Minn. 192, 198, 69 N.W.2d 660, 665 (1955).
 
 
 16
 We also note preliminarily that "summary judgment is an extreme remedy and one which is not to be entered unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." Bellflower v. Pennise, 548 F.2d 776, 777 (8th Cir.1977). In reviewing a decision of the district court to grant summary judgment, we apply the same standard as the district court: summary judgment should not be entered unless the pleadings and supporting documents show that there exists no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); see Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The government contends this case is proper for summary judgment because the construction of an insurance contract is a question of law and the policy language at issue is clear and unambiguous. However, we reject the government's construction of the phrase "beets which are not acceptable under the contract with a processor." Under our construction of the language contained in the second proviso of paragraph 8(c)(1), there remain the issues of the quantity of beets the processor found unacceptable under its contract with the growers and the value of the damaged beets. Those issues must be decided by the district court on remand.
 
 
 17
 The government contends that to invoke the policy's second loss determination method, which applies to harvested beets that are not acceptable under the processor's contract with the growers, the processor must reject delivery of the beets. We disagree. The government does not dispute that, in effect, this policy provision confers on the processor the capacity to dictate which loss determination method will be invoked. The processor does so, according to the policy language, by determining that beets delivered to it are not acceptable under its contract with the growers. We part company with the government, however, in the proper manner of ascertaining whether the processor has deemed certain beets not acceptable. The government interprets certain conduct of the processor (accepting delivery of beets) as conclusive on that question. The growers, on the other hand, argue that the mere fact the processor has not rejected delivery of beets outright does not necessarily mean the processor deems such beets acceptable. We find the growers' view constitutes a more reasonable construction of the policy, and we do so for several reasons.
 
 
 18
 First, given the type of crop damage the growers experienced here--damage that occurs over time, manifests after harvest and delivery (during storage), and the extent of which cannot be precisely determined until the time of processing--we think the government's construction of the second proviso of paragraph 8(c)(1) is unworkable. With this type of damage, acceptability of beets cannot be determined until sometime after delivery when the beets are about to be processed. Thus, it is unrealistic to say that the processor's conduct at delivery, a time when the extent of damage to the beets cannot yet be ascertained, is conclusive on the processor's decision as to whether the beets are acceptable for processing. The government's view requires a processor to reject delivery of beets before it is able to determine whether such beets can be processed in order to invoke the second proviso of paragraph 8(c)(1).[7]
 
 
 19
 Second, although the government contends that the processor's rejection of beets is the standard under the second proviso, it is apparent the FCIC does not use simply rejection of the beets as the standard for paying indemnity in all cases. Evidence in the record suggests that use of the objective term "not acceptable" in the insurance policy permits the FCIC to scrutinize whether a processor who has refused to accept delivery of the crop has actually done so because the crop was unacceptable or for some other reason. See Deposition of Robert W. Fox, Appendix at 263 ("in the event that there was indication that Crystal Sugar or any other processing plant was rejecting harvested product solely for the purpose that they just had too much of the product * * * then we would just verify that they were unprocessable. In this case where it would be sugar beets, if that issue came up, I would have sent them to North Dakota State to see that there was an insured cause of damage only if it was suspect that they were being rejected for any other reason than an insured cause."). The FCIC seems to require that the processor reject delivery of the beets and that the beets be objectively unacceptable. Because the policy language only requires that the beets be "not acceptable," we find outright rejection of the beets is not necessary to invoke the second proviso.
 
 
 20
 Finally, we note the government's position that a processor must reject delivery of beets in order to invoke the second proviso is not consistent with its actions in this case. It is undisputed by the parties that in the spring of 1982 the FCIC offered to exclude from production to count 15.8% of the freeze-damaged beets which the processor had in fact accepted but later discarded because the beets could not be processed. If rejection of the beets is required under the second proviso, as the government contends, no adjustment (other than that based on sugar content) should be made where the processor accepted delivery. While the government contends this payment was a management decision for "administrative, non-contractual settlement purposes," we think it indicates an inconsistency in the standard used by the FCIC for indemnity under the second proviso of paragraph 8(c)(1). Since the FCIC was apparently willing to allow a 15.8% adjustment of production to count as to beets which were accepted but not processed, we do not think the government can maintain at this point that the growers are not entitled to an adjustment (other than that based on sugar content) for other beets which were accepted by the processor but only partially processed. In summary, we do not think it necessary that the processor formally reject delivery of sugar beets in order for the beets to be deemed "not acceptable under the contract with a processor" and indemnified as such. We find nothing in the policy to require such a formal rejection.
 
 
 21
 We now proceed to the primary basis for the district court's grant of summary judgment--that the FCIC could not satisfactorily determine after the time of delivery the decreased value of the damaged beets due to the freeze. We fail to see how the FCIC can avoid indemnity to the growers by reason of its own failure to make a timely appraisal. The FCIC was well aware of the extended freeze and its damaging consequences to the sugar beet farmers in the Valley. The record is replete with evidence that the growers were in constant communication with FCIC field agents regarding the damage to the beet crop due to the freeze. If such an appraisal was a sine qua non for determining indemnity, the FCIC agents should have forseen the need to appraise the freeze-damaged beets. The district court implicitly found that, under the terms of the policy, either the growers or the processor were required to request an appraisal by the FCIC of unacceptable beets in order to invoke the second proviso of paragraph 8(c)(1). There exists nothing in the contract to that effect. Paragraph 8(c)(1) does not specify how and when the FCIC appraisal is to be made. The contract simply provides that notice of loss must be given by the growers to the FCIC within a thirty day period.[8] As stated above, the district court relied on paragraph 5(g) of the appendix to the policy, which provides that the FCIC may "reject any claim for indemnity if any of the requirements of this section * * * are not met and [it] determines that the amount of loss cannot be satisfactorily determined." (Emphasis added). We hold that the growers' claim should not be denied recovery under this provision because the FCIC has failed to specify any contractual requirement the growers have not fulfilled.
 
 
 22
 The record contains material evidence indicating that the FCIC, in its transactions with the growers throughout this ordeal, have succeeded in leading the growers down a primrose path, which would ultimately defeat their claim for indemnity. FCIC agents allegedly advised the growers to harvest their freeze-damaged beets and to deliver them to their processor. A FCIC official also informed the growers that the computation of indemnity would have to await the completion of processing. Then, after previously assuring the growers their losses were covered by their crop insurance policy, the FCIC refused to indemnify the growers for the major portion of their losses. While we do not hold the government liable under an estoppel theory, see Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 383 n. 1, 68 S.Ct. 1, 3 n. 1, 95 L.Ed. 10 (1947), the factual background regarding the FCIC's course of dealing with these growers must be considered under basic principles of good faith and fairness. See Bain v. Champlin Petroleum Co., 692 F.2d 43, 47 (8th Cir.1982) ("In every contract there is an implied covenant of good faith and fair dealing on the part of both parties.") (emphasis in original). One may have to turn "square corners" when dealing with a governmental entity,[9] but this does not mean the government may operate so recklessly so as to put parties dealing with it entirely at its mercy.
 
 
 23
 The insurance contract, in our view, does not foreclose a post-processing appraisal of the freeze-damaged beets based upon expert opinion. Experts routinely testify on many aspects of damage claims notwithstanding the fact that valuation estimates oftentimes are based on physical evidence that is no longer available. The use of such expert testimony rests on the settled rule that once the fact of damage is determined to exist, reasonable estimates may suffice to prove the damage. See Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264-66, 66 S.Ct. 574, 579-80, 90 L.Ed. 652 (1946); George E. Hoffman & Sons, Inc. v. International Brotherhood of Teamsters, Local 627, 617 F.2d 1234, 1247 (7th Cir.), cert. denied, 449 U.S. 937, 101 S.Ct. 335, 66 L.Ed.2d 160 (1980) (only a "just and reasonable approximation" of the amount of damages is required). The record indicates that before the motion for summary judgment was ruled upon, both sides retained experts who could testify as to the value of the damaged beets and whether, in fact, an accurate appraisal can be made. The parties' experts can be cross-examined as to whether the valuations might be affected by any post-harvest production factors.
 
 
 24
 We hold the district court erred in granting the government's motion for summary judgment. We also find that the insurance policy should be construed to allow indemnity under the second proviso of paragraph 8(c)(1). On remand, the trier of fact must determine the tonnage of freeze-damaged beets that was reasonably found unacceptable by American Crystal and the reasonable value of this loss. Accordingly, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.
 
 
 
 [1]
 The Honorable Edward J. Devitt, United States Senior District Judge for the District of Minnesota
 
 
 [2]
 Paragraph 8(c)(1) of the policy provides:
 (1) Any harvested production of sugar beets shall be adjusted by the factor (rounded to three decimal places) obtained by dividing the average percentage of sugar in sugar beets, as determined from individual tests made at the time of delivery to the processor, by the percentage of sugar shown on the actuarial table: Provided, however, That if individual tests of sugar content are not made by the processor at the time of delivery of the sugar beets, the factor to be used shall be 1.000: Provided, further, That for harvested sugar beets which are not acceptable under the contract with a processor due to an insurable cause of loss occurring within the insurance period, the Corporation will determine the production to be counted by (i) dividing the value of the beets, as determined by the Corporation by the value of undamaged beets containing the percentage of sugar shown on the actuarial table and (ii) multiplying the result obtained by the tons of beets harvested: Provided, further, That any Corporation appraisals shall be the tons appraised with no adjustment for quality.
 
 
 [3]
 The FCIC urges that since the growers have been indemnified under the first sentence of paragraph 8(c)(1), no indemnity is owed under the second proviso. The fact that the two loss determination methods are mutually exclusive, however, does not preclude the growers from making a claim under the second method which affords greater recovery to the growers. The growers contend they received minimal indemnity under the first method because the sugar content of the damaged beets before processing was generally above the contractual minimum. Thus, the growers have not been adequately compensated for the substantial loss due to the reduced storability of the freeze-damaged beets. Because we agree with the district court's conclusion that the two loss determination methods are mutually exclusive, the indemnity determined to be owed the growers for unacceptable beets under the second proviso must be offset by the adjustment for reduced sugar content already credited the growers for those beets
 
 
 [4]
 American Crystal's contract with its grower-members provides that the "Company has the option of rejecting any diseased, frozen or damaged beets, beets less than 12% sugar, or less than 80% purity, beets which, in Company's opinion, are not suitable for storage or for the manufacture of sugar ..."
 
 
 [5]
 In a letter to Senator Andrews, dated December 31, 1981, Mr. Fox stated:
 It appears now that we may have to wait until all processing is completed before we can determine the percent of reduction in tonnage and sugar content due to the freeze. This average percent of reduction would be applied to each producer's damaged production to arrive at the amount of indemnity, if any, they might have.
 Appendix at 588.
 
 
 [6]
 The district court cites to section 5(g) of the policy appendix, which provides:
 (g) The Corporation reserves the right to reject any claim for indemnity if any of the requirements of this section or section 8 of the policy are not met and the Corporation determines that the amount of loss cannot be satisfactorily determined.
 
 
 [7]
 The government's interpretation of the second proviso of paragraph 8(c)(1) also ignores the fact that private processing companies and cooperatives differ as to the circumstances under which they will accept delivery of unacceptable beets. The record shows that as members of a cooperative, individual growers are paid a pro-rata share of the cooperative's net income remaining after the beets are processed and the sugar is sold. In contrast, if a grower contracts with a privately-owned processing company, the grower is paid for beets on delivery. Because of the different contractual arrangement, a cooperative may be willing to accept delivery of unacceptable beets for salvage purposes, whereas a private processing company would not do so without negotiating a new contract with growers whereby growers are paid for their damaged beets only if and to the extent sugar can be recovered. These observations are made simply to highlight the fact that in the cooperative context, accepting delivery of beets from a grower-member does not necessarily mean the processor has deemed such beets acceptable under its contract with the growers
 
 
 [8]
 For purposes of the summary judgment motion, the notices of loss were presumed to be timely filed by the growers. However, if a claim that the notices were untimely is determined to have been properly raised by the government, then that issue is a factual question which must be decided by the district court on remand
 
 
 [9]
 In Rock Island, Ark. & La. R.R. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920), quoted in Heckler v. Community Health Servs., --- U.S. ----, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984), Justice Holmes declared that "[m]en must turn square corners when they deal with the Government." See also United States Marshals Serv. v. Means, 741 F.2d 1053, 1059 (8th Cir.1984)